THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
STANLEY L. HOUSTON, Appellant.

Second Department, February 4, 1980

**APPEARANCES OF COUNSEL**

*Bruce A. Petito* for appellant.

*John R. King, District Attorney (Bridget R. Rahilly* of counsel), for respondent.

**OPINION OF THE COURT**

TITONE, J.

The principal questions before this court are (1) whether the State Legislature, under the Marihuana Reform Act of 1977 (L 1977, ch 360, eff July 27, 1977), graded the prohibited sale or possession of marihuana on a "pure" weight basis, rather than on an "aggregate" weight basis and, (2) assuming the Legislature did enact a "pure" weight standard at the time,

whether the People proved beyond a reasonable doubt that defendant-appellant made a criminal sale of more than 16 ounces of unadulterated and undiluted marihuana to a police informer on August 11, 1977. For purposes of the ensuing discussion it should also be mentioned that appellant was likewise charged under the same indictment with criminally possessing more than 16 ounces of the same substance on that date.

### THE LAW

Under subdivision 6 of section 220.00 of the Penal Law, the term "marihuana" is governed by the following definition set forth in subdivision 20 of section 3302 of the Public Health Law: " 'Marihuana' means all parts of the plant of the genus Cannabis, whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. *It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.*" (Emphasis supplied.) Prior to the enactment of the Marihuana Reform Act of 1977, the prohibited possession of marihuana was, *inter alia,* graded on an aggregate weight basis. Thus, former subdivision 3 of section 220.06, and former subdivision 10 of section 220.09 of the Penal Law (L 1973, ch 276, § 19, as amd by L 1973, ch 1051, §§ 8, 9) provided, respectively, *inter alia:*

"§ 220.06 * * *

"A person is guilty of criminal possession of a controlled substance in the sixth degree when he knowingly and unlawfully possesses: * * *

"3. one or more preparations, compounds, mixtures or substances *of an aggregate weight of one-quarter ounce* or more containing marihuana" (emphasis supplied).

"220.09 * * *

"A person is guilty of criminal possession of a controlled substance in the fifth degree when he knowingly and unlawfully possesses: * * *

"10. one or more preparations, compounds, mixtures or

substances *of an aggregate weight of one ounce* or more containing marihuana" (emphasis supplied).

With respect to the sale of marihuana prior to the enactment of the Marihuana Reform Act of 1977, such a sale was not graded by weight. Under former section 220.34 (subd 1, par [c]) of the Penal Law,[1] the sale of *any* amount of marihuana was a class C felony.

As evidenced by its legislative findings and statement of purpose,[2] the State Legislature, in enacting the Marihuana Reform Act of 1977, was motivated by a desire to reduce the seriousness of the legal consequences surrounding convictions for possession or sale of marihuana. To implement such goal it passed, amongst others, the following sections under article 221 of the Penal Law which are relevant to this discussion (L 1977, ch 360, § 3):

## (1) Possession of marihuana

(A) "§ 221.05 Unlawful possession of marihuana.

"A person is guilty of unlawful possession of marihuana when he knowingly and unlawfully possesses marihuana.

"Unlawful possession of marihuana is a violation punishable only by a fine of not more than one hundred dollars. However, where the defendant has previously been convicted of an offense defined in this article or article 220 of this chapter, committed within the three years immediately preceding such violation, it shall be punishable (a) only by a fine of not more than two hundred dollars, if the defendant was

---

1. Former section 220.34 (subd 1, par [c]) of the Penal Law (L 1973, ch 276, § 19) provided:

"Criminal sale of a controlled substance in the fifth degree

"A person is guilty of criminal sale of a controlled substance in the fifth degree when:

"1. He knowingly and unlawfully sells: * * *

"(c) marihuana".

2. Legislative findings and statement of purpose (L 1977, ch 360, § 1):

"The legislature finds that arrests, criminal prosecutions and criminal penalties are inappropriate for people who possess small quantities of marihuana for personal use. Every year, this process needlessly scars thousands of lives and wastes millions of dollars in law enforcement resources, while detracting from the prosecution of serious crime. * * *

"The legislature does not encourage or condone the recreational use of marihuana or any other drug. Rather, the purpose of this act is to insure that the many people in New York who commit the conduct which this act makes a violation not be subjected to unduly harsh sanctions."

previously convicted of one such offense committed during such period, and (b) by a fine of not more than two hundred fifty dollars or a term of imprisonment not in excess of fifteen days or both, if the defendant was previously convicted of two such offenses committed during such period."

(B) "§ 221.15 Criminal possession of marihuana in the fourth degree.

"A person is guilty of criminal possession of marihuana in the fourth degree when he knowingly and unlawfully possesses more than two ounces of marihuana.

"Criminal possession of marihuana in the fourth degree is a class A misdemeanor."

(C) "§ 221.25 Criminal possession of marihuana in the second degree.

"A person is guilty of criminal possession of marihuana in the second degree when he knowingly and unlawfully possesses more than sixteen ounces of marihuana.

"Criminal possession of marihuana in the second degree is a class D felony."

## (2) Sale of marihuana

(A) "§ 221.40 Criminal sale of marihuana in the fourth degree.

"A person is guilty of criminal sale of marihuana in the fourth degree when he knowingly and unlawfully sells marihuana except as provided in section 221.35 of this article.

"Criminal sale of marihuana in the fourth degree is a class A misdemeanor."

(B) "§ 221.55 Criminal sale of marihuana in the first degree.

"A person is guilty of criminal sale of marihuana in the first degree when he knowingly and unlawfully sells more than sixteen ounces of marihuana.

"Criminal sale of marihuana in the first degree is a class C felony."

A comparison of the statutes pertaining to possession and sale of marihuana in force before the enactment of the Marihuana Reform Act of 1977 and those enacted thereunder, clearly demonstrates that there have been meaningful reductions in the penalties for the prohibited possession and sale of marihuana. For example, under the prior law, possession of a preparation, compound, mixture, etc., of an *aggregate weight*

of one-quarter ounce or more of a mixture containing mari-huana was a class D felony (Penal Law, former § 220.06, subd 3); and the possession of a preparation of an *aggregate weight* of one ounce or more of a mixture containing marihuana was classified as a class C felony (Penal Law, former § 220.09, subd 10). In contradistinction under article 221 (Marihuana Reform Act of 1977), *possession of marihuana* does not attain the level of a class A misdemeanor unless the marihuana content in and of itself in any mixture weighs more than two ounces (Penal Law, § 221.15), nor does such possession attain the level of a class D felony unless the marihuana content in and of itself in the mixture weighs more than 16 ounces (Penal Law, § 221.25).

In similar vein, whereas under the prior law an illegal sale of a mixture containing marihuana in any quantity was a class C felony (Penal Law, former § 220.34, subd 1, par [c]), under article 221, as enacted, sale of marihuana does not rise to the level of a class C felony unless the marihuana content in and of itself in the mixture weighs more than 16 ounces (Penal Law, § 221.55).

■ It seems manifest therefore that in foregoing the use of prior statutory language specifically setting forth "aggregate" weight standards, the Legislature in 1977 adopted a "pure" weight standard to attain its goal to reduce drastically the penalties for the prohibited possession and sale of substantial quantities of marihuana. Simply put, the Legislature decreed that penalties should be meted out solely on the basis of the sale or possession of those portions of the plant of the *genus cannabis* capable of producing an intoxicating effect.

■ However, as graphically illustrated by the facts of this case set forth, *infra,* it seems evident that in changing from an aggregate weight to a "pure" weight standard in 1977, the Legislature was not aware that in many instances problems of proof would render the 1977 act extremely difficult, and perhaps impossible, to enforce. Briefly stated, although there are scientific methods of determining the presence of mari-huana in any mixture or compound, given a mass of ground vegetable matter, which is the usual form in which illicit marihuana is sold, apparently today there is no feasible way to analyze the mass involved to determine the pure weight of the marihuana therein apart from the nonmarihuana content of the mass. To accomplish such an analysis would require the expert to perform a separate test on each of the countless

ground particles which comprise the mass—separating out all parts of the *cannabis* plant specifically listed in the governing section of the Public Health Law as nonmarihuana, as well as other adulterants that might be in the mixture, e.g., any other plant matter, dirt, or even bird droppings (see *People v Vandercook,* 99 Misc 2d 876, 877). This difficulty of proof was accurately forecast by Professor Arnold Hechtman in his practice commentary to the Marihuana Reform Act when he stated (McKinney's Cons Laws of NY, Book 39, Penal Law, art 221, 1979-1980 Cumulative Annual Pocket Part, p 75):

"In Article 221, however, the quantities are not stated in aggregate weight terms but in the language usually employed in Article 220 when only the weight of the prohibited substance—the so-called 'pure weight' standard—is applicable, e.g., 'more than two ounces of marihuana' (§ 221.15).

"Having chosen this method of expression, presumably the Legislature intended that only the weight of the marihuana itself be considered, without regard to the weight of the dilutents or adulterants with which it may be mixed. If this was, indeed, the Legislature's intent, *it will cause serious prosecution problems,* particularly with respect to 'small quantity' cases. As a practical matter, marihuana offenses, at least those below felony level, should be predicated on the aggregate weight standard. *Prompt legislative clarification of this issue is needed."* (Emphasis supplied.)[3]

FACTS

Under a two-count indictment, the defendant-appellant, Stanley L. Houston, and codefendant Leroy Frank Davis were charged with criminal sale of marihuana in the first degree, in that they sold more than 16 ounces of marihuana on August 11, 1977 in the City of Poughkeepsie. They were also charged with criminal possession of marihuana in the second degree involving the alleged possession of more than 16 ounces of marihuana on the same date and at the same location (see Penal Law, §§ 221.55, 221.25 [L 1977, ch 360]).

Appellant and Davis were jointly tried. The People's case

---

**3.** As a result of the evidentiary problems raised in this case and others such as the *Vandercook* case *(supra),* and undoubtedly the accurate prognostication of Professor Hechtman, the Legislature in 1979 changed all the weight references in article 221 to reflect the pre-1977 aggregate weight standard (see L 1979, ch 265). However, since appellant was indicted and tried under the 1977 act, the law as it then existed, i.e., "pure" weight standard, is applicable herein.

was based primarily on the testimony of Robert Peter Dolan, a police informer, and Anthony Maiello, a police chemist. Neither accused called any witnesses. The essential facts are not in dispute.

Dolan testified that while acting as a police informer, in the hope of obtaining favorable disposition of charges of burglary and possession of stolen property then pending against him, he met appellant in Poughkeepsie approximately at noon August 10, 1977. He asked appellant whether the latter could find him 10 pounds of "pot" (marihuana) and one-quarter kilo of cocaine. Appellant responded that he could obtain the pot in a relatively short time, but that it would take longer to obtain cocaine. At approximately 11 P.M. that evening, appellant telephoned Dolan and advised him that he (appellant) had the marihuana and that Dolan should come and get it. Dolan promised to call back after he arranged a ride to pick up the marihuana. During the return call, made between 2 and 3 A.M. on August 11, Dolan and appellant agreed to meet in Poughkeepsie later in the morning. As a result of a second call to appellant later that morning (recorded by the police), he and appellant arranged to meet in a park in Poughkeepsie. For the meeting Dolan was supplied by the police with an automobile, $550 in cash and a 10-pound scale.

When Dolan arrived at the park at about 12 or 12:30 P.M., he alighted from the vehicle and met appellant at the other end of the park. After a brief conversation, Dolan returned to the car and appellant left. About 25 to 30 minutes later, appellant returned, and handed Dolan a "sample joint" which the latter lit and smoked. Dolan showed appellant the money that he had placed in the trunk of the car. Shortly thereafter codefendant Davis appeared on the scene carrying a box. The parties, using the scale in the trunk of Dolan's car, then weighed each of five bags of vegetable matter taken from the box Davis was carrying. At this point the police approached and arrested appellant and Davis. In total, the police discovered 20 bags in the box.

Anthony Maiello, the chemist, then testified. He stated that the matter found in the 20 bags recovered by the police weighed 9.3 pounds. His tests on a sample from each bag confirmed the presence of marihuana in each sample. However, he did not attempt to segregate from the total mass those portions of the marihuana plant excluded by statute from the definition of marihuana, e.g., sterile seeds, resin, and

mature seeds. Moreover he could not rule out the presence of an oregano adulterant "in any degree, large or small." Of the total weight of 4,256.6 grams of vegetation he analyzed, *Maiello was unable to state what amount thereof was pure marihuana.*

DETERMINATION OF THE TRIAL COURT

In response to appellant's motion for a trial order of dismissal at the close of the People's case, the trial court held that since the Marihuana Reform Act of 1977 set forth a "pure" weight standard, possession of in excess of 16 ounces of marihuana as charged was not established because it could not be proved with reasonable scientific certainty that the mass contained that amount of pure marihuana as defined in subdivision 20 of section 3302 of the Public Health Law. Accordingly, the trial court granted appellant's motion to dismiss the possession count as charged, indicating that it would submit to the jury simple possession as defined in then section 221.05 of the Penal Law *(People v Davis,* 95 Misc 2d 1010).

With respect to the sale charge, however, the trial court held that, in view of the fact that the term "sell" under the Penal Law (§ 220.00, subd 1) is defined as "to sell, exchange, give or dispose of to another, *or to offer or agree to do the same"* (emphasis supplied), the "pure" weight argument, controlling as to the possession charge, did not apply equally to the sale charge. In the trial court's opinion, a prosecution for sale of a given weight of marihuana, based on an *offer* to sell, may be sustained notwithstanding the absence of expert testimony as to the actual weight of the marihuana. The court reasoned that a sale of a given weight of marihuana does not require that an accused have knowledge of the actual weight of the marihuana so long as there is evidence before the jury that he offered to sell the quantity charged, specifically intended to do so, and had a reasonable basis to conclude that he could do so.

Applying such rationale to this case, the trial court held that the jury would be justified in finding that the alleged offer to sell 16 ounces or more of pure marihuana was proven, notwithstanding the conceded absence of expert testimony as to the pure weight of the marihuana. The court adverted to the following facts adduced at the trial which would support such a jury finding (95 Misc 2d, at pp 1019-1020):

(1) Telephonic communications between the appellant and the informer revealed that (a) appellant advised the informer he would sell him 10 pounds of marihuana, (b) they would meet at a specified location in the City of Poughkeepsie, (c) the informer said he would "weigh it", and (d) the parties to the deal indicated that payment for the matter was to be in bills of $100 denomination.

(2) With respect to the meeting at which the sale was to be consummated, (a) the informer arrived at the appointed hour and location with a car and a "wad" of money supplied by the police, (b) appellant delivered to the informer a large box of what appeared to be marihuana, (c) several of the 20 bags of vegetable matter in the box were weighed, (d) the sale price was $5,000, and (e) the informer held himself out as an expert in the marihuana trade.

(3) The chemist who analyzed the vegetable matter in the 20 bags seized by the police testified that each bag contained marihuana, although he was unable to ascertain the weight content of the "pure" marihuana.

Accordingly, the trial court declined either to dismiss the first count of the indictment charging appellant with first degree sale of marihuana under then section 221.55 of the Penal Law, or in the alternative, to reduce it to a misdemeanor sale.

### DETERMINATION OF APPEAL

■ In order to prove the appellant guilty of the sale as charged, the People were obligated to provide affirmative evidence that not only did he intend to deliver marihuana in its pure state but that he also intended to sell more than one pound thereof (see *People v Gonzales,* 66 AD2d 828; see, also, *People v Hawkins,* 69 AD2d 823). Contrary to the position taken by the trial court, I do not agree that the evidence adduced by the People at the trial was sufficient to prove beyond a reasonable doubt that appellant offered to sell more than 16 ounces of "pure" marihuana on August 11, 1977, within the purview of section 221.55 of the Penal Law (L 1977, ch 360). Rather, what the evidence does unquestionably prove is that the informer and appellant entered into a corrupt bargain whereby 10 pounds of matter containing marihuana in an unspecified quantity was to be sold, and was sold, by appellant to the informer.

It is true, as the trial court stated, that where guilt of a sale of a prohibited drug is posited on an accused's representation and offer, the absence of a complete chemical analysis would not necessarily be detrimental to the prosecution. Indeed, the nature and quantity of the prohibited matter in such situation may be proven circumstantially without receipt of such matter in evidence (see *People v Jones,* 63 AD2d 582; *People v Pilgrim,* 67 AD2d 554).

However, the conclusion reached by the trial court, to wit, that appellant's actions evidenced an intent to sell more than one pound of pure marihuana, is untenable. As is gleaned from the following excerpts from the testimony of Robert Peter Dolan, the informer, he approached appellant to seek his aid in obtaining 10 pounds of marihuana by aggregate weight, and appellant complied by furnishing him with a mass of vegetable matter containing marihuana which weighed slightly less than that aggregate weight, i.e., 9.3 pounds.

### INITIAL MEETING BETWEEN THE INFORMER AND APPELLANT ON AUGUST 10, 1977

"Q You, Wade Terrelonge and another individual met Stanley Houston in the City of Poughkeepsie?

"A Yes.

"Q Approximately what time was that?

"A Noon, 11, 12:00. Somewhere in there.

"Q Where did this meeting take place?

"A The corner of Noxon and Academy Streets.

"Q Describe for us the circumstances surrounding the meeting.

"A I asked him [Houston] if he could find ten pounds of pot.
* * *

"Q Can you tell us what the first thing that was said was?

"A 'Can you find ten pounds?'

"Q Who said that?

"A I said that.

"Q What was his response to that?

"A 'Yes.' "

### EXPERTISE OF THE INFORMER

"Q So the last eight to ten years you were buying a sub-

stance which you thought was marijuana eight out of twelve months of every year, correct?

"A Yes.

"Q Can you describe for us what you physically see when you buy marijuana or what you think it is?

"A *It is like dried up grass with seeds in it.*"

### FIRST TELEPHONE CONVERSATION BETWEEN THE INFORMER AND APPELLANT

"Q August 10 evening conversation on the telephone. Do you recall when it occurred?

"A I think around 11:00.

"Q In the evening?

"A Yes * * *

"Q And the substance was 'I got it, come and get it'?

"A Yes

"Q And you said, 'Not today.'

"A No, I said, 'I will call you back as soon as I can find a way up there.' "

### SECOND TELEPHONE CONVERSATION BETWEEN THE INFORMER AND APPELLANT

"Q When was the next time you either met with or conversed with Stanley Houston?

"A I called him back later on in the early morning hours at 2:30, 3:00.

"Q In the morning, and that would be August 11?

"A Yes * * *

"A I told him whenever I could get up there, I would call him."

### THIRD TELEPHONE CONVERSATION BETWEEN THE INFORMER AND APPELLANT

"Q Did there come a time when you contacted Stanley Houston between 11 and 1:00 on the morning of August 11, 1977?

"A Yes.

"Q * * * [W]hat else was said by you or him?

"A I told him I was in Hopewell, did he have it, yes he did. * * *

*"I told him I had it in hundreds, hundred dollar bills. He said that was fine. I asked him if it was all bagged up. * * * He said, 'Yup.'*

"Q And he said it was fine for hundreds? "A Yes."

### AGREED PRICE OF THE MARIHUANA

"A *I knew basically what the price would be the day before on the street.*

"Q *How did you know that?*

"A *Going prices are $450 to $500 a pound.*

"Q Isn't that a little unusual when you are selling or buying marijuana not to discuss price?

"A *I bought it enough to know what the price is.*

"Q Suppose his price was higher or lower. Suppose it was bargain day, you don't know. You didn't discuss price at all?

"A *Either way I was going there with $5000. * * *

"It could have been $4500. * * *

"—*with the assumption of paying $5000 for ten pounds.*

"Q Why did you figure $5000? * * *

"A *It could have been $4,500 that I had to pay or $3,500, but $5000 is a reasonable amount of cash to go buy ten pounds with. * * *

"Q *You assumed that he was going to sell this to you at a certain price, did he?*

"A *Yes. * * *

"Q Which is the true story, again what you testified yesterday and today too, or what you testified in front of the Grand Jury?[4] Was money mentioned or not?

"A It may have been * * *

"THE COURT: He is asking you whether money was ever discussed, which I mean at any time. * * *

"[A] Probably said something on the street the day before. * * *

---

4. It should also be mentioned that before the Grand Jury, the informer testified as follows:

"Answer: *I asked him [Houston] how much. He said five grand.*

"Question: Five grand?

"Answer *Five thousand dollars for ten."*

*"Money may have been mentioned on the 10th.* It might not be down in yesterday's proceedings, *but it had to have been mentioned at some time."*

### MEETING ON AUGUST 11

"Q You told Mr. Petito [appellant's trial attorney] that there was no discussion of price, is that correct?

"A There may have been, but I just can't remember it right now.

"Q Do you know the going rate for marijuana?

"A Depending on how good it is, anywhere between 400 if it is garbage to 550 if it is really good.

"Q *How many pounds did you order?*

"A *Ten.*

"Q How much money did you take with you?

"A $550

"Q *How much* money was that $550 *purported to be?*

"A $5000."

### TRANSACTION ON AUGUST 11: WEIGHING OF MARIHUANA

"Q Mr. Dolan, how many of these bags did you remove from People's Exhibit 3?

"A Five.

"Q What did you do with the bags?

"A *Weighed each one*

"Q How did you do that?

"A *Placed them on the scale.*

"Q Where was Stanley Houston while this was taking place?

"A *Still standing on my right."*

From the above testimony of the informer Dolan, I conclude that no logical inference may be adduced therefrom that appellant ever intended or offered to sell a quantity of pure marihuana to Dolan in excess of one pound. The thrust of Dolan's testimony was that (a) his expertise and experience in the trafficking of marihuana was in the purchase and sale of such matter in a diluted or adulterated state, (b) his offer to purchase that commodity (to buy 10 pounds of "pot") was couched in terms suggesting an aggregate purchase, (c) he estimated that the "going" or "street" price for 10 pounds of "pot" was approximately $5,000, based on a unit price of

approximately $500 an aggregate pound, and assumed that appellant understood that this was so, and (d) he brought a scale with him to the meeting where the transaction was to be consummated ostensibly for the purpose of verifying that appellant had furnished him with 10 pounds of diluted or adulterated marihuana.

The conclusion is inescapable, therefore, that appellant's actions and responses were totally in harmony with the intent manifested by Dolan. Succinctly stated, their minds met and meshed as to the nature, content and volume that was to be bought by Dolan and sold by appellant, to wit, 10 pounds of marihuana in the aggregate. The record is totally devoid of evidence from which it can be logically inferred that although Dolan's offer was to purchase 10 pounds of diluted marihuana, appellant had in mind that he was to sell Dolan a mass of vegetable matter containing, *inter alia,* more than a pound of pure marihuana. In any agreement, whether it be corrupt and unenforceable, or for a valid purpose, a promise is to be interpreted in that sense in which the promisor knew or had reason to believe that the promisee understood it (cf. *Barlow v Scott,* 24 NY 40; *Hoffman v Aetna Fire Ins. Co.,* 32 NY 405, 412). Where the promisor has reason to suppose that the promisee understands a promise in a particular sense, that meaning should be adopted in construing the agreement (see *Nellis v Western Life Ind. Co.,* 207 NY 320, 332). This is especially true in interpreting a criminal statute where the genesis of the crime set forth therein emanates from an agreement. Under the circumstances herein, the agreement cannot be construed so as to give full force and effect to something which, obviously, appellant never had in mind, namely, that he intended to sell or offer to sell more than one pound of pure marihuana to a person, who, for all intents and purposes, was seeking to buy 10 pounds of an aggregate mass of vegetable matter containing an unspecified amount of the unadulterated substance.

In sum, I conclude that the People did not sustain their burden of proving beyond a reasonable doubt, either by the testimony of their expert witness or the informer, or by their testimony read *in pari materia,* that the mass of matter sold the informer by appellant contained more than one pound of pure marihuana, or that appellant intended to sell more than that amount to Dolan (cf. *Purifoy v State,* 359 So 2d 446 [Fla]). However, the evidence adduced at the trial does prove beyond

a reasonable doubt that marihuana in its pure state, in an unmeasurable quantity, was present in the mass of vegetable matter sold by appellant to Dolan. Therefore, the judgment of conviction rendered September 28, 1978 should be modified by reducing the conviction for criminal sale of marihuana in the first degree, to a conviction for the lesser offense of criminal sale of marihuana in the fourth degree, wherein proof of quantity is not required (see Penal Law, § 221.40), and remitting for sentencing thereon. The judgment of conviction rendered as to the possession charge should be affirmed.

MOLLEN, P. J., HOPKINS and MANGANO, JJ., concur.

Judgment of the County Court, Dutchess County, rendered October 16, 1978, affirmed.

Judgment of the same court, rendered September 28, 1978, modified, on the law, by reducing the conviction of criminal sale of marihuana in the first degree to one of criminal sale of marihuana in the fourth degree. As so modified, said judgment affirmed and case remitted to the County Court, Dutchess County, for resentence and for further proceedings pursuant to CPL 460.50 (subd 5).