THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JAMES LYNCH, Appellant.

Fourth Department, February 26, 1982

APPEARANCES OF COUNSEL

*Richard H. Speranza* (*Paul Crapsi* of counsel), for appellant.

*Peter L. Broderick* (*Shavasp Hanesian* of counsel), for respondent.

### OPINION OF THE COURT

DOERR, J.

The question presented on this appeal is whether the testimony of drug users who purchased the substances from defendant is sufficient as a matter of law to prove that the substances sold were controlled substances.

Defendant was convicted of multiple counts of criminal sale of marihuana and criminal sale of a controlled substance (phencyclidine). Since the investigation which led to defendant's indictment was an ongoing one and the sales were to persons who purchased the drugs for their own use or resale, the police were not able to confiscate each substance transferred. Therefore, at trial, the People had to rely largely on the testimony of the buyers to establish that the substances purchased were in fact marihuana or phencyclidine.

As to the marihuana counts, the jury found defendant guilty of selling marihuana to four persons who testified for the People. Each of these witnesses was questioned as to his familiarity and expertise with marihuana, and each admitted to great familiarity with the substance. One testified he had used it "20 times" and was "positive" that the substance he purchased from defendant was marihuana. Two others testified that they used marihuana 50 times or more and were familiar with the effect of marihuana and the substance they purchased several times from defendant gave them the expected effect. Another testified that he had smoked marihuana "many times" before and the substance purchased from defendant was like that which he had previously smoked.

Defendant was found guilty of criminally selling phencyclidine to three persons who testified for the People. One witness testified that he used this drug 5 or 10 times with the effect that it leaves his mind blank. He stated that while he is not an expert on PCP (phencyclidine) he knew the drug he purchased was PCP because of his experience with it. Another testified that he had learned some years earlier to recognize PCP from its taste. A third testified she had used phencyclidine 7 or 8 times and recognized the substance by its "nasty" taste and the effect it had, making her feel "drunk * * * drowsy". She had never obtained phencyclidine from anyone except defendant.

While the testimony concerning marihuana is clearly stronger than that establishing that phencyclidine was the substance sold to the witnesses, there is other corroborating evidence that the latter drug was sold to the witnesses. There were numerous tapes of telephone conversations

between defendant and the witnesses in which he agreed to sell phencyclidine to them. While the terminology in these conversations was generally guarded, the buyers, when asked to interpret what was said, stated that they were referring to the purchase of PCP. Further, one of the witnesses testified that he regularly made bimonthly purchases from defendant for resale. Finally, pursuant to a search of defendant's home, the police seized four tinfoil packets containing a white, powdery substance. Upon chemical analysis these substances proved to be phencyclidine.

In urging that the trial court erred in permitting purchaser-users to testify that the drugs purchased were marihuana and phencyclidine, defendant places almost exclusive reliance on *People v Kenny* (30 NY2d 154). The quick answer to this is that in *People v Kenny* (*supra*) the Court of Appeals did not state that a person who used marihuana is not qualified to testify that the substance used was the forbidden substance. Instead, the court stated (p 157) that the State should not be "willing to rest a conviction and prison sentence solely on a young person's *two or three isolated experiences with what he thinks is 'pot'*" (emphasis supplied). The test, then, in situations where the illegal substance is not available for analysis, is the experience of the witness and the nature of his qualifications to identify the substance at issue. It is a matter of degree. A conviction was sustained based on the testimony of an 18-year-old narcotics user who asked defendant if he had heroin and upon being given a white powder and inhaling it obtained a " 'high feeling' ". Another witness asked defendant to get 50 capsules of heroin and upon receiving capsules of " 'a white substance' " he injected the powder diluted with water into his veins and got " 'a good feeling' " (*People v Pasquarello*, 306 NY 759, 760).

To sustain a conviction for selling drugs, it is not essential that the substance be produced in court (*People v Houston*, 72 AD2d 369, 379; *People v Jones*, 63 AD2d 582, 583). Witnesses, through whose testimony the precise identification of the drug is sought, as in the instant case, are essentially expert witnesses. Such a witness may be qualified to speak from actual experience, from observa-

tion or from study and must be shown to be qualified as an expert on the particular subject concerning which he is called upon to testify. An expert who bases his opinion upon facts of which he has personal knowledge must first testify to these facts before expressing his opinion (Richardson, Evidence [Prince — 10th ed], § 368, pp 343-345). These qualifying tests have been met in the instant case. While it is for the Trial Judge to decide whether the witness is qualified to testify as an expert, the extent of the expert's qualifications may be considered by the jury on the question of the weight to be given his testimony (*Meiselman v Crown Hgts. Hosp.*, 285 NY 389, 398).

While New York appellate courts have had little occasion to treat the precise question presented by this case, courts of other jurisdictions are in accord with the views expressed herein. Thus, the testimony of teenagers who had a familiarity with marihuana were permitted to testify that when they smoked the substance purchased from a defendant they became high and were of the opinion that the substance was marihuana. "Reactions and acquired knowledge from the use of a drug such as marijuana qualify a witness to testify that what he later used was the forbidden drug" (*People v Partin,* 254 Cal App 2d 89, 92). A heroin addict who described how heroin is obtained and packaged, the paraphernalia used and the manner in which it is used was permitted to testify that the substance she obtained from defendant was in fact heroin. The court observed that if users demonstrate a knowledge of the narcotic as such, they are competent to testify. The weight to be given such testimony is for the jury (*People v Chrisman,* 256 Cal App 2d 425, 430-433, cert den 395 US 985). A drug addict who had used heroin daily over a long period of time was permitted to testify that she knew the effect of heroin and that the substance she purchased from defendant gave her the effect of heroin. The court was of the view that an unqualified requirement that chemical analysis was needed to sustain a conviction for sale of the drug would, where the substance has been consumed, tend to nullify the act and permit much illicit traffic in drugs to be carried on without restraint (*Commonwealth v Aikens,* 179 Pa Super Ct 501, 504-505). Again, an addict who had used

various drugs over a period of six years and who reacted differently to the varied drugs was permitted to testify that upon using the substance in question he received a reaction similar to that which he experienced from heroin (*United States v Atkins*, 473 F2d 308, 313, cert den 412 US 931). The court also found it significant that throughout the relevant period the parties acted consistent with the idea that the substance was heroin (*United States v Atkins, supra*, p 314). A witness was permitted to testify that the substance she had received from defendant was marihuana, the basis for her conclusion being her admitted knowledge and use of marihuana, rolling the cigarette herself and becoming "high" when she smoked it. This was found to be a sufficient foundation for admitting her testimony, to be weighed and judged by the jury (*Ewing v United States*, 386 F2d 10, 15, cert den 390 US 991).

In a heroin sale prosecution, the People relied on the testimony of a former addict who purchased a quantity of heroin from defendant. She testified that she had used heroin or cocaine hundreds of times over the past two years or more. She explained the effects heroin had on her and that she got these effects from the substance she purchased from defendant. The court permitted the witness to express the opinion that the substance she purchased and used was heroin. Apparently of the view that testimony of drug addicts must be regarded more circumspectly because of their addiction, the court stated that "as an expert witness it will be more necessary for him to fully develop his 'reasoning' process as to why and how he determined that the substance that he purchased and used was heroin. To qualify a heroin addict as an expert it is necessary to establish the number of times that he has used heroin. Then it is necessary for him to describe his reactions to the heroin when it was used on previous occasions. Finally, it is necessary for the addict to state that he purchased what he thought was heroin and that he received the same reaction from this purchase that he had received earlier" (*People v Boyd*, 65 Mich App 11, 13-15). In our view the standards thus enunciated as applicable to the testimony of addicts are equally applicable to any consumer of a drug

who testifies on the identity of the drug in a sale prosecution case. (See, generally, Ann., 95 ALR3d 978.)

■ In light of the foregoing, the court did not err in permitting consumers of the drugs in question to testify that the substances they received from defendant were marihuana or phencyclidine. This testimony was circumstantially supported by surveillance, video tapes, wire taps and chemical testing of a substance found in defendant's home (see *People v Pasquarello,* 306 NY 759, *supra; People v Partin,* 254 Cal App 2d 89, *supra*).

■ The court imposed a sentence of two and one-third to seven years on the marihuana convictions and the same sentence on the phencyclidine convictions, both sentences to run consecutively (along with a one-year concurrent sentence on another charge). The court stated "Your total sentence is four and two-thirds minimum and fourteen maximum." This was error.

The crimes for which defendant stands convicted occurred in April and May, 1978. Section 70.30 (subd 1, par [b]) of the Penal Law in effect at that time provided: "If the sentences run consecutively, the minimum periods of imprisonment merge in and are satisfied by service of the period which has the longest unexpired time to run, and, except as provided in paragraph (c) of this subdivision, the maximum terms are added to arrive at an aggregate maximum term equal to the sum of all the maximum terms".

However, the court apparently imposed sentence pursuant to an amendment to section 70.30 which became effective September 1, 1978 after the date of the crime in question, and which provided, in pertinent part, that if two sentences run consecutively, "the minimum periods of imprisonment are added to arrive at an aggregate minimum period of imprisonment equal to the sum of all the minimum periods" (L 1978, ch 481, § 24).

The general savings clause applicable to all legislation provides: "The repeal of a statute or part thereof shall not affect or impair any act done, offense committed or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred prior to the time such repeal takes effect, but the same may be enjoyed, asserted, en-

forced, prosecuted or inflicted, as fully and to the same extent as if such repeal had not been effected." (General Construction Law, § 93.)

Thus, defendant was entitled to be sentenced under the provisions of law which were in effect at the time when the crimes were committed (*People v Thompson,* 55 AD2d 528, 529; *People ex rel. Kammerer v Brophy,* 255 App Div 821, affd 280 NY 618). "Particularly in the area of criminal law, statutes which condemn an act innocent when done, or increase the punishment for previously committed crimes, have always been regarded as oppressive and prohibited, as ex post facto laws, by the Federal Constitution. (U. S. Const., art. I, § 10; see, e.g., *People ex rel. Pincus* v. *Adams,* 274 N. Y. 447, 454-455; *People* v. *Hayes,* 140 N. Y. 484, 490-491; *Calder* v. *Bull,* 3 Dallas [U. S.] 386, 390.)" (*People v Oliver,* 1 NY2d 152, 158; see, also, *People v Young,* 66 AD2d 666; cf. *People v Monteleone,* 30 AD2d 158.)

Defendant's conviction is modified to the extent that the minimum sentence to be served is two and one-third years.

SIMONS, J. P., DENMAN, BOOMER and SCHNEPP, JJ., concur.

Judgment insofar as it imposes sentence, unanimously modified, on the law, and otherwise affirmed, in accordance with opinion by DOERR, J.