■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFRED DREW, Appellant.—Harvey, J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered February 3, 1987, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (three counts), criminal injection of a narcotic drug and attempted criminal injection of a narcotic drug.

On February 28, 1986 there was a gathering of people in the apartment of Lisa Jackson in the City of Albany. Reportedly at Jackson's request, defendant brought to that gathering several glassine bags of a white powdery substance which the People maintain was heroin. At some time during the course of the evening the substance was injected into the bodies of Jackson and her boyfriend, Jeffrey Melber, and the next day was injected by Raymond Leigh and Wallace Toliver. Toliver took 11 envelopes after agreeing to help defendant sell them. At about 4:00 P.M. on that day Jackson became ill and died of causes apparently unrelated to the instant case. An investigation was conducted.

As a result of a search of the apartment, several items were

seized including a piece of mirror with white powder residue; a box found in the medicine cabinet containing a black shoe lace, syringe, hypodermic needle and bottle cap "cooker"; an empty bottle cap found in the medicine cabinet; a syringe and needle found in a dresser drawer; and a plastic bag containing white powder which was found in a kitchen drawer. After testing by a forensic scientist, only the bottle cap "cooker" tested positive for the presence of narcotics. The forensic scientist who performed the autopsy of Jackson's body found the presence of substances including quinine but no traces of the presence of either heroin or morphine (i.e., metabolized heroin).

Both defendant and his companion, Warren Christopher, were indicted for three counts of criminal sale of a controlled substance in the third degree and two counts of criminal injection of a narcotic drug. Defendant's motions for severance were denied and a joint trial was held wherein Christopher chose not to testify but defendant testified on his own behalf. The evidence introduced by all parties will be described in more detail in our discussion of the issues raised on appeal. Ultimately, defendant was convicted of three counts of criminal sale of a controlled substance in the third degree, one count of criminal injection of a narcotic drug and one count of attempted criminal injection of a narcotic drug. He was given concurrent prison sentences, the greatest of which was 7 to 21 years. Two principal issues are raised by defendant on this appeal. These issues stem from the denial by County Court of defendant's motions for severance of the trial and the admission into evidence, over defendant's objection, of a statement made by Christopher.

Defendant contends that the statement made by Christopher to the police was ineffectively redacted and therefore improperly admitted into evidence at trial. The so-called *Bruton* rule *(Bruton v United States,* 391 US 123) recognizes the fundamental constitutional principle that extrajudicial statements made without the opportunity for cross-examination are admissible only against the person who made them. Accordingly, in the situation of a joint trial, a statement made by one defendant which inculpates a codefendant may not be received into evidence unless it can be, and is, effectively redacted *(see, e.g., People v Smalls,* 55 NY2d 407; *People v Jackson,* 22 NY2d 446; *People v Burrelle,* 21 NY2d 265). The burden of effective redaction rests with the People *(see, People v Wheeler,* 62 NY2d 867, 869).

As to whether the statement was effectively redacted, a

more thorough examination of the evidence must be first undertaken. In Christopher's statement, references to defendant by name were eliminated. The statement went on to describe how Christopher and an unnamed companion traveled to Albany together to see Jackson. After arriving at the Jackson apartment, Christopher's companion handed Jackson a box which contained glassine envelopes of heroin. Christopher stated that Jackson took one of the envelopes into the bathroom, and eventually called Christopher and his companion to the bathroom because she was having difficulty injecting herself. Christopher then "skin-popped" Jackson by inserting the needle straight into her arm because they were unable to inject a vein or artery. The statement goes on to describe how Christopher aided Melber in injecting the substance and how, on the next day, he and his companion negotiated with Toliver to sell heroin for them.

Looking to the evidence adduced at trial, Melber testified for the People and described how Christopher and defendant came together to Jackson's apartment that first day and helped Jackson inject the substance brought by defendant. Melber then entered the bathroom and, together with defendant and Christopher, prepared the contents of a glassine envelope and injected them. Melber testified that based on his personal knowledge and prior experience with heroin, this substance produced the same feeling as heroin, which was unlike that of other drugs that he had used in the past.

Leigh described how he arrived at Jackson's apartment the day after defendant and Christopher came to Albany. According to Leigh, Jackson had called him and requested his assistance in selling the envelopes. Leigh testified that he entered the bathroom and injected part of the contents of an envelope. Leigh testified that he had used heroin in the past on more than 200 occasions, and that the sensation in the instant case was similar to those prior experiences. According to Leigh, he drove with defendant and Christopher to the Arbor Hill section of Albany in order to look for purchasers. Leigh encountered Toliver, and the four returned to the Jackson apartment. Leigh testified that he then left to go to the store and, upon returning, drove Toliver to his place of employment.

Toliver testified that he injected himself with the contents of a packet. Toliver had used heroin in the past on more than 100 occasions and testified that the reaction on that day was similar to that of previous occasions. Toliver left the apartment with 11 envelopes after agreeing to help defendant sell

them. Toliver testified that he met defendant and Christopher on the street after work, and gave defendant money and the remaining envelopes.

Defendant's testimony at trial describing the important facts was very similar to the assertions made in Christopher's statement and was also in line with the basic facts as recounted by Melber, Leigh and Toliver. Only with respect to the nature of the substance provided by defendant to these individuals does his testimony significantly differ. Defendant's testimony was that he had talked to Jackson, a former girlfriend, by telephone and that she had requested that he come to visit her and to bring with him some heroin. She stated that she needed it to use and also to sell in order to obtain money that she badly needed. Defendant testified that because he was concerned about her using heroin, he made inquiry upon visiting a drug dealer about the possibility of a subterfuge by giving her a substance other than a narcotic but which could be easily mistaken for a narcotic. Defendant stated that he obtained quinine, and that this was the substance that he delivered to Jackson and to the other people in the Jackson apartment on the dates previously mentioned.

The posture of the case then distilled to a single issue—whether the People proved the accusations of the indictment that the substance provided by defendant was in fact heroin. The only physical evidence submitted by the People were those items found in the Jackson apartment. However, those people who used the substance were very experienced heroin addicts who testified as previously stated. If believed, their identification of the substance as heroin was sufficient to establish that issue at trial (see, People v Pierce, 112 AD2d 527; People v Lynch, 85 AD2d 126).* There was testimony by forensic experts which was somewhat inconclusive but did present issues of fact for the jury to consider. Although heroin was not found in Jackson's body, a reasonable explanation for its absence which could be accepted by the jury was provided by medical testimony describing how quickly heroin is metabolized in the body.

In view of the positions taken by the parties, it is our opinion that any mistake that may have been made by County Court in determining the Christopher statement to be prop-

---

* Although County Court charged in its instructions that Leigh, Toliver and Melber were accomplices of defendant (see, CPL 60.22), sufficient independent evidence, including the presence of heroin in the cooker found at Jackson's apartment, was introduced at trial to provide the necessary corroborative testimony (see, People v Lynch, 85 AD2d 126).

erly redacted was harmless beyond a reasonable doubt (see, *People v Crimmins*, 36 NY2d 230, 237). On this proof, there was no reasonable possibility that the admission of Christopher's statement describing the substance as heroin contributed to defendant's conviction (see, *People v Baldassara*, 151 AD2d 1004, *lv denied* 74 NY2d 845). The defense was faced with very significant testimony establishing that defendant delivered the packages to the Jackson apartment and participated in the events that followed. The Christopher statement added nothing to that portion of the proof. Against all this testimony, defendant only relied upon his own testimony that the substance which he delivered was quinine and not heroin, and that only quinine was found in Jackson's body. However, defendant's own expert noted that quinine is commonly used to dilute or "cut" otherwise deadly pure heroin. Although defendant's expert opined that heroin or morphine should have been found in Jackson's body, on cross-examination he admitted that this conclusion was based on the theory that a theoretical amount of pure heroin was used in the injection. Once the amount of heroin was lessened in the hypothesis and the dosage diluted, he could not state with certainty that narcotics would have been found in Jackson's body. Accordingly, not only was the admission of the statement harmless, but there was sufficient evidence as a matter of law to sustain defendant's conviction for injecting Jackson despite the fact that no narcotics were found in her system.

With respect to defendant's contention that he and Christopher should have been granted separate trials (see, CPL 200.40 [1]), we decline to hold that County Court abused its discretion in denying defendant's motions for severance (see, *People v Nelson*, 147 AD2d 774, *lv denied* 74 NY2d 794). For instance, one of the grounds raised by defense counsel and strenuously argued herein is that defendant required the testimony of Christopher which, based on an affidavit sworn to by Christopher and later articulated by Christopher to defense counsel, would have exculpated defendant. While we agree that the affidavit and letter are exculpatory in nature, it is nonetheless apparent that the statements are conclusory and do not offer proof as to what Christopher's testimony would have been were the parties given separate trials (see, *People v Bornholdt*, 33 NY2d 75, 87, *cert denied sub nom. Victory v New York*, 416 US 905). Moreover, it is not shown in these statements that Christopher would indeed testify on defendant's behalf (see, *supra*). Christopher merely stated that he would not take the stand in the joint trial and testify against defendant. Consider-

ing this conclusory proof, it was not an abuse of County Court's discretion to deny defendant's motions for severance. In addition, we do not agree that it would have been impossible to properly redact the statement.

As a final matter, we reject defendant's contention that he was deprived of his constitutional and statutory rights to a speedy trial. According to defendant, the time from the date of his arrest, March 7, 1986, to the commencement of trial on December 1, 1986 (excluding 10 days for the filing and hearing on omnibus motions) was eight months and 14 days and, therefore, his right to a speedy trial was violated *(see,* CPL 30.30 [1] [a])*.* However, at the hearing on defendant's motion, the People contended that they were present at every calendar call subsequent to May 2, 1986 and marked the case ready for trial. Although defendant contends that the People announced they were ready when in fact they were not *(see, People v Kendzia,* 64 NY2d 331, 337), we are not persuaded by this bald assertion. Although the District Attorney may have contemplated bringing additional charges against defendant at the time, that does not necessarily mean, as defendant argues, that the prosecutor was not ready to proceed on the charges in the instant indictment. As for defendant's constitutional speedy trial claim under CPL 30.20 and the US Constitution, we note that defendant has not alleged any specific facts in support of this argument, nor do we find any evidence that the defense was prejudiced by any delay *(see, People v Taranovich,* 37 NY2d 442, 445).

Defendant's remaining arguments, including his claim that his sentence was harsh and excessive, have been examined and have been found to be without merit.

Judgment affirmed. Kane, J. P., Casey, Weiss, Mercure and Harvey, JJ., concur.