■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM CZARNOWSKI, Appellant. [702 NYS2d 398] —Spain, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered December 10, 1998, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the fourth degree.

On January 8, 1998, defendant was working as an intern at a pharmacy in the Village of Endicott, Broome County. While searching for a missing hair clip, the supervising pharmacist, Jeanne Forrest, and another employee found an unlabeled vial containing white pills behind a refrigerator. Forrest determined that the pills were generic Vicodin, a controlled substance, and, after reporting the incident to a supervisor, returned these pills to the general stock of generic Vicodin. Later that day, defendant admitted to Forrest that he had taken the pills and hidden them behind the refrigerator, explaining that he intended to give them to his father who suffered from back pain. Forrest telephoned the police the following day and defendant was eventually indicted on one count of criminal possession of a controlled substance in the fourth degree.

Defendant made a pretrial motion to dismiss, arguing that the People's failure to obtain a chemical analysis of the pills warranted dismissal of the indictment pursuant to CPL 210.20 (1) (h). County Court denied this motion. After a jury trial, defendant was found guilty as charged and was sentenced to a conditional discharge. Defendant now appeals.

We affirm. Initially, we reject defendant's assertion that the indictment should have been dismissed because the People failed to have the substance at issue analyzed pursuant to CPL 715.50 (1), which states, in part, as follows: "in every felony case involving the possession or sale of a dangerous drug, the * * * *agency charged with custody of such drugs* * * * shall within forty-five days after receipt thereof perform or cause to be performed an analysis of such drugs, such analysis to include qualitative identification; weight and quantity where

appropriate" (emphasis supplied). CPL 715.50 applies to drugs seized by or in the custody of police (*see,* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 715.05, at 380). Here, however, the pills in question were never in the possession or custody of the police or the People because the supervising pharmacist returned the pills to stock before the police ever became involved. Moreover, the People's failure to perform an analysis did not preclude their proffering testimony as to the nature and amount of the substance where the absence of the substance at trial was not the result of bad faith (*see, People v Reed,* 44 NY2d 799, 801; *People v Henderson,* 123 AD2d 883, 884, *lv denied* 69 NY2d 712).

Notably, the substance itself need not be produced at trial (*see, People v Christopher,* 161 AD2d 896, 897-898, *lv denied* 76 NY2d 786; *People v Lynch,* 85 AD2d 126, 128; *People v Houston,* 72 AD2d 369, 379) and, in the absence of a laboratory analysis, "the nature and quantity of the prohibited matter * * * may be proven circumstantially without receipt of such matter in evidence" (*People v Houston, supra,* at 379). In light of the substantial circumstantial evidence at trial that the substance involved was generic Vicodin, defendant was not prejudiced by any arguable failure by the People to comply with CPL 715.50. "The test * * * in situations where the illegal substance is not available for analysis, is the experience of the witness and the nature of his [or her] qualifications to identify the substance at issue" (*People v Lynch, supra,* at 128).

We also reject defendant's contention that Forrest's testimony regarding the chemical composition of the pills was not competent because she relied in part on hearsay, i.e., on package inserts and pharmaceutical reference manuals not in evidence, in opining that the pills at issue were generic Vicodin. An expert may give a legally competent opinion without reliance on personal knowledge or facts in evidence where the data relied upon is of the kind ordinarily accepted by experts in the field (*see, People v Sugden,* 35 NY2d 453, 459). Here, Forrest testified that she relied upon package inserts provided by pharmaceutical manufacturers and reference journals in ascertaining the chemical composition of the pills, and that reliance on such information is customary among pharmacists as it is not part of a pharmacist's duties to conduct chemical analyses of drugs dispensed. Forrest also testified that she compared the numerical code on a pill from the subject vial with the code on the pills in the general stock of generic Vicodin and that, based on this comparison and her experience in dispensing this drug, the pills in issue were generic Vicodin.

County Court properly permitted Forrest to testify at trial to the chemical composition of the substance contained in the pills as we have no difficulty finding that Forrest, the supervising pharmacist, possessed the qualifications and experience necessary to reliably identify the pills in issue.

To calculate the number of pills defendant had secreted behind the refrigerator, Forrest testified that she filled a test vial of the same size as the subject vial with generic Vicodin pills. After determining that the test vial held 130 pills, she weighed 130 generic Vicodin pills, concluding that they weighed 4.04 ounces. County Court accepted a vial of Vicodin pills as demonstrative evidence. In our view, the court properly permitted the People to prove the nature, existence, quantity and weight of the alleged controlled substance via this circumstantial proof.* Further, we reject defendant's contention that the People's use of pills from stock as demonstrative evidence required a chemical analysis of the illustrative pills, and we find no impropriety in this practice.

Finally, we conclude that the People presented competent evidence that the pills taken by defendant contained a controlled substance included in schedule III (e) (4) of Public Health Law § 3306. The definition of "narcotic drugs" in Public Health Law § 3306, schedule III (e) states in part, as follows:

"Narcotic drugs. Unless specifically excepted *or unless listed in another schedule*, any material * * * containing * * *

"(4) [n]ot more than three hundred milligrams of dihydrocodeinone (*hydrocodone*) per one hundred milliliters or not more than fifteen milligrams per dosage unit, *with one or more active nonnarcotic ingredients* in recognized therapeutic amounts" (emphasis supplied).

Referring to the "unless listed in another schedule" language, defendant asserts that, as hydrocodone is listed in schedule II (b) (1) (10) of Public Health Law § 3306, the substance involved

---

* Indeed, the method employed by the People's expert witness, a licensed pharmacist, to identify the pills which had been marked by their manufacturer in compliance with Federal regulations, is more reliable than the methods employed, and deemed reliable, in cases in which users of illegal drugs identified the substances at issue based on their experience in using or dealing in unlawful drugs (*see, People v Christopher, supra*, at 897-898; *People v Lynch, supra*, at 127-129; *People v Houston, supra*, at 379-380). In those cases, witnesses who were characterized as "experts" testified that the drug at issue was the alleged specific substance based upon their perception that it made them feel the same way that the specific drug had made them feel in the past or looked the same as marihuana they had seen in past dealings (*see, People v Christopher, supra*, at 897-898; *People v Lynch, supra*, at 127-128; *People v Houston, supra*, at 379).

here is not included as a narcotic drug under schedule III (e) (4). However, schedule II includes hydrocodone by itself, while schedule III (e) (4) refers to hydrocodone combined with a non-narcotic ingredient such as acetaminophen. Forrest testified that the pills at issue in fact contained 500 milligrams of acetaminophen and five milligrams of hydrocodone. Accordingly, the pills taken by defendant are governed by schedule III rather than schedule II, as they contained hydrocodone combined with another nonnarcotic substance in the quantities specified in schedule III.

We have considered defendant's remaining contentions and find them to be without merit.

Peters, J. P., Carpinello, Graffeo and Mugglin, JJ., concur. Ordered that the judgment is affirmed.

