OPINION OF THE COURT
Mario J. Rossetti, J.
Defendant has been indicted for official misconduct in violation of Penal Law § 195.00 (1), and hindering prosecution in violation of Penal Law § 205.55, and h&s moved for dismissal of the indictment on the grounds that the evidence before the Grand Jury was not legally sufficient to establish the offenses charged. The People contend that legally sufficient evidence was presented to the Grand Jury to establish both counts of the indictment which was returned on June 8, 2001.
The first count of the indictment, charging defendant with official misconduct in violation of section 195.00 of the Penal Law, alleges that the defendant:
“on or about the 30th day of June, 1999, in this County, being a public servant, to wit: a Police Officer employed by the Village of Depew, with intent to obtain a benefit or deprive another person of a benefit, and with knowledge that such act was unauthorized, committed an act relating to his office but which constituted an unauthorized exercise of his official functions, to wit: he provided information concerning an ongoing narcotics investigation to the mother of a target of that investigation requesting that she use this information to warn her son, who was one of the targets of that investigation.”
The crime of official misconduct is defined in section 195.00 of the Penal Law, to wit:
“A public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit: 1: He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized.”
*139 The evidence presented to the Grand Jury, when viewed in the light most favorable to the People, establishes that the defendant, a Village of Depew police officer, while assigned to the department dispatch desk, received information that a Chad Seiler had allegedly sold the drug ecstasy. Shortly after receiving that information, defendant telephoned Seiler’s mother and advised her that her son was accused of selling drugs and further suggested that she should tell him to stop working at the establishment where the drug was allegedly being sold.
The defendant contends that the act complained of — defendant having called a suspect’s mother to warn her son about an ongoing drug investigation — although unauthorized and perhaps relating to his office, is not an official function of the defendant’s office as a police officer and that the first count of the indictment must, therefore, be dismissed. The People, however, contend that act complained of relates to an exercise of one of the officer’s official functions, i.e., receiving information relating to criminal investigations and complaints, and was unauthorized. The People’s argument is, in essence, that the complained of act need not constitute an unauthorized exercise of defendant’s official function, but only must be related to that function.
The salient issue as presented by the parties, therefore, is whether or not the act complained of (calling the suspect’s mother) must be an “official function” in order to violate the statute. The People say it does not while the defendant contends that the act complained of must constitute an official function in order to violate the statute.
Precedents may provide some guidance. In People v Rossi (69 AD2d 778) a Correction Department officer undertook to “fix” traffic summonses upon payment to him of a sum of money by an undercover operative. The Court held that the defendant’s conviction of official misconduct could not stand because the described circumstances were not of “an act relating to his office [as a Correction Department officer] but constituting an unauthorized exercise of his official functions.” (Rossi, at 779 [internal quotation marks deleted].) In Rossi the act of “fixing” traffic tickets was neither an act relating to the defendant’s office, nor could it constitute an unauthorized exercise of his official functions.
In People v Groskin (122 AD2d 561), defendant, a part-time community services worker employed by the New York State Department of Correction, was indicted for official misconduct. The indictment alleged that he “exercised his discretion not to *140 dény a female person known to the Grand Jury, conjugal visits with her husband * * * in return for this female person providing him with sexual favors.” (Groskin, at 561 [internal quotation marks omitted].) The Fourth Department dismissed the indictment, holding that the defendant had no actual or apparent authority to grant or deny conjugal visits to the complainant and could not be indicted for exercising discretion he did not have. In effect, since the act of granting or denying conjugal visits was not one of defendant’s official functions, the indictment was dismissed.
Finally, Penal Law § 195.00 (1) clearly states the act relating to defendant’s office must “constituí[e] an unauthorized exercise of his official functions.” (Emphasis supplied.) In Groskin, the indictment failed because the arrangement of conjugal visits was not one of the defendant’s official functions. In Rossi, the “fixing” of traffic tickets was not related to any of his official functions. Similarly, it was not an official function of the defendant herein to warn a suspect’s mother of a complaint against her son.
Since there is no evidence that the alleged conduct of warning a suspect’s mother was an act constituting one of the defendant’s official functions, it could not be a related but unauthorized exercise of an official function. In fact, it appears self-evident that such conduct is not an official function of any police officer. As stated in Rossi (supra, at 779), “Whatever administrative derelictions or, possibly, other crimes may have been encompassed in defendant’s improprieties, we are limited of course to the crimes for which defendant was indicted and of which he was convicted.” Although defendant’s conduct may constitute another crime or a violation of internal policy and procedure possibly subjecting him to disciplinary sanctions, it does not constitute official misconduct and the first count of the indictment must, therefore, be dismissed.
The second count charges the defendant with hindering prosecution in the third degree, alleging that the defendant:
“On or about the 30th day of June, 1999, in this County, rendered criminal assistance to a person who had committed a felony, to wit: with intent to prevent, hinder or delay the discovery or apprehension of, or the lodging of a criminal charge against a person, to wit: Chad Seiler, who he knew or believed had committed a felony or was being sought by law enforcement officials for the commission of a felony, he warned the said Chad Seiler of *141 impending discovery or apprehension by providing information concerning an on-going narcotics investigation targeting Chad Seiler to Seiler’s mother, requesting that she use this information to warn her son, who was one of the targets of that investigation.”
Penal Law § 205.55 describes the crime of hindering prosecution as follows: “A person is guilty of hindering prosecution in the third degree when he renders criminal assistance to a person who has committed a felony.”
The term “renders criminal assistance” is defined by Penal Law § 205.50:
“a person ‘renders criminal assistance’ when, with intent to prevent, hinder or delay the discovery or apprehension of, or the lodging of a criminal charge against, a person who he knows or believes has committed a crime or is being sought by law enforcement officials for the commission of a crime, or with intent to assist a person in profiting or benefitting from the commission of a crime, he * * *
“2. Warns such person of impending discovery or apprehension.”
The crime contains three elements: (1) rendering criminal assistance (as defined by Penal Law § 205.50); (2) the commission of a felony by the person assisted; and (3) the defendant’s knowledge or belief that the person committed a crime (see, People v Chico, 90 NY2d 585).
The defendant contends that the second count fails because legally sufficient evidence was not presented to the Grand Jury that Chad Seiler had committed a felony, to wit: criminal sale of a controlled substance in the fifth degree. Defendant specifically contends that no evidence was presented to provide reasonable cause to believe that Seiler sold the drug ecstasy. The People contend that the testimony of witnesses who testified that they purchased the drug ecstasy from Chad Seiler was sufficient to establish this element of the offense.
This court notes that, in his introductory statements to the Grand Jury, the prosecutor stated that the “focus here is not the drug dealings, it’s not on Chad Seiler.” Such a preamble may have possibly and improperly diminished the Grand Jury’s understanding that in order to indict for the second count that it must find reasonable cause that Chad Seiler did, in fact, commit a crime — one of the necessary elements of the second count. This lessening of the grand juror’s fact-finding responsi *142 bility is exacerbated by the fact that the evidence relating to Seiler’s commission of a crime is rather scant. The evidence presented to the Grand Jury on this issue is that a witness testified that she advised the defendant that she had purchased the drug ecstacy from Seiler on one occasion (“maybe once”). She did not testify that she ever used the drug, was familiar with its effect, or that she could otherwise identify it as such.
In drug-related prosecutions, the drug does not have to be available for analysis to sustain an indictment or a conviction. In such cases, the purchasers and users of drugs may testify, under certain circumstances, that they are familiar with the drug in question and that the substance they purchased was, indeed, the illegal drug. In determining the sufficiency of the evidence in this regard, the focus of the inquiry is “the experience of the witness and the nature of his [or her] qualifications to identify the substance at issue.” (People v Czarnowski, 268 AD2d 701, 702, quoting People v Lynch, 85 AD2d 126, 128 [internal quotation marks omitted].) People v Swamp (84 NY2d 725) addressed this issue in the context of Grand Jury proceedings.
In Swamp, the Court stated that in a drug-related prosecution, the People’s case is legally sufficient if the evidence provides a “reliable basis” for inferring the presence of a controlled substance (People v Kenny, 30 NY2d 154, 157). Although prima facie evidence of the presence of a controlled substance need not be based on expert testimony, more than conclusory assertions that the defendant possessed a drug are required at the Grand Jury stage (People v Dumas, 68 NY2d 729; People v Kenny, 30 NY2d, at 157). The opinion of a layperson unsophisticated about drugs does not meet that standard (see, People v Kenny, 30 NY2d, at 157; People v Lynch, 85 AD2d 126, 128-129; People v Jewsbury, 115 AD2d 341, 343; People v Pierce, 112 AD2d 527, 528; People v Christopher, 161 AD2d 896).
People v Christopher (161 AD2d 896) and People v O’Neill (285 AD2d 669) demonstrate how these standards are applied. In Christopher, the drug user testified that he had both injected and snorted heroin in the past, that he had taken other substances by injection, and that the feeling produced by the substance in question was similar to that of heroin and was different from that of other substances. Thus, he was competent to render an opinion regarding the identity of the substance. In contrast, in O’Neill, the purchasers merely stated their conclusion that the pills purchased were Vicodin or hydrocodone, with no explanation for the basis of their conclusion. Nor did *143 they testify that the defendant, O’Neill, expressly represented that the pills were Vicodin or hydrocodone. In those circumstances, the purchasers’ identifications of the substance were deemed conclusory and insufficient to support the drug trafficking charges (see, People v Dumas, 68 NY2d 729).
In the case at bar, the purchaser never testified that she had ever used the drug, what effect the drug had on her, that the drug was represented by Seiler to be ecstasy or any other controlled substance, or that she was otherwise familiar with and able to identify the drug. The evidence, therefore, fails to satisfy the standards enunciated in Swamp (supra) and O’Neill (supra).
The People further contend, however, that a sale can occur by the simple offer to sell the drug. Evidence supporting that theory of culpability, however, was not presented to the Grand Jury nor was it included in the instructions to this Grand Jury. The theory presented was that a sale of the drug ecstasy, and not an offer to sell, was made to the witness. Under such circumstances, if the drug actually sold was not ecstasy, the indictment would fail for that reason (see, People v Acevedo, 192 AD2d 1094, lv denied 81 NY2d 1010; People v Mike, 92 NY2d 996; see, People v Fleary, 85 AD2d 742; cf., People v Christopher, 161 AD2d 896, lv denied 76 NY2d 786; People v Jewsbury, 115 AD2d 341).
Accordingly, since the evidence presented to the Grand Jury fails to provide a “reliable basis” for inferring that Seiler had sold a controlled substance, the evidence is insufficient to establish that he committed a felony — a necessary element of the second count — and that count must also be dismissed (see, People v Swamp, supra; People v Kenny, supra).
Pursuant to the foregoing, defendant’s motion to dismiss the indictment is, in its entirety, granted.