*692 OPINION OF THE COURT
Dan Lamont, J.
The indictment charges the defendant Anthony Forgione with three counts of criminal sale of a controlled substance in the fifth degree. The first and second counts allege that on or about September 25, 2005, at 16 Cataract Street, City of Cohoes, Albany County, the defendant Anthony Forgione did knowingly and unlawfully sell the controlled substances oxymetholone and testosterone to Arthur C., there being no legitimate medical need for such drugs. The third count alleges that on or about December 20, 2005, at 16 Cataract Street, City of Cohoes, Albany County, the defendant Anthony Forgione did knowingly and unlawfully sell the controlled substance testosterone to Arthur C., there being no legitimate medical need for such drug.
Defendant, by omnibus motion, moves this court for an order granting the following relief:
I. Dismissal of the Indictment for Defective Grand Jury Proceeding
The court finds that the proceedings before the grand jury substantially conformed to the requirements of article 190 of the Criminal Procedure Law. Although limited hearsay/ irrelevant information was presented to the grand jury — such as the undercover officer ordering controlled substances from other clinics — and the legal instructions would certainly not be sufficient for this court to charge the trial jury, this court holds and determines that such deficiencies were not so egregious as to impair the integrity of the grand jury’s deliberations (see People v Wade, 260 AD2d 946 [3d Dept 1999]; see also People v Calbud, Inc., 49 NY2d 389 [1980]). Motion denied.
II. Dismissal of the Indictment for Alleged Insufficiency of the Evidence Before the Grand Jury
This court has examined the stenographic minutes of the grand jury proceeding resulting in the instant indictment. Release of the grand jury minutes to legal counsel is not necessary to assist the court in making its determination on the motion.
Criminal Procedure Law § 190.65, “Grand jury; when indictment is authorized,” provides in part as follows:
“1. Subject to the rules prescribing the kinds of offenses which may be charged in an indictment, a *693 grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense provided, however, such evidence is not legally sufficient when corroboration that would be required, as a matter of law, to sustain a conviction for such offense is absent, and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.” (Emphasis supplied.)
The grand jury may indict a person for an offense when it possesses legally sufficient evidence that also establishes reasonable cause to believe that such person has committed such offense (People v Hackett, 228 AD2d 377 [1st Dept 1996], lv denied 88 NY2d 986 [1996]). In People v Swamp (84 NY2d 725 [1995]), the Court of Appeals stated:
“The first prong of the statute requires that the People present a prima facie case; the second ‘dictates the degree of certitude grand jurors must possess to indict’ (People v Jennings, 69 NY2d 103, 115). On a motion to dismiss an indictment under CPL 210.20 (1) (b), the court is limited to consideration of the first prong, legal sufficiency of the evidence. Inquiry into the adequacy of the proof to establish reasonable cause — the ‘degree of certitude’ the evidence provides — is exclusively the province of the Grand Jury (CPL 190.65 [1] [b]; People v Jennings, 69 NY2d, at 115).” (Id. at 729-730.)
The grand jury’s primary function is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution (see People v Swamp, supra). “The reviewing court must consider whether the evidence, viewed most favorably to the People, if unexplained and uncontradicted — and deferring all questions as to the weight or quality of the evidence — would warrant conviction” (id. at 730, citing People v Mikuszewski, 73 NY2d 407, 411 [1989] and People v Jennings, 69 NY2d 103, 114-115 [1986]).
(a) Lack of Formal Laboratory Analysis
In this case, no evidence of any formal laboratory analysis was presented to the grand jury. The substances allegedly sold by defendant Forgione to Arthur C. in 2005 were never recovered and were not available for laboratory testing and analysis. The only evidence as to the identification of the al *694 leged controlled substances herein was the sworn testimony of Arthur C.
In People v Kenny (30 NY2d 154 [1972]), the Court of Appeals held that the People’s witness lacked sufficient experience and qualifications and therefore lacked a reliable basis to establish the identity of marihuana — the essence of the crime charged.
In People v Mullen (152 AD2d 260 [3d Dept 1989]), the Appellate Division, Third Department, determined that a witness who “characterized himself as an habitual user of cocaine for some 6 to 8 months prior to January 7, 1979 and described his sensations from snorting the material defendant gave him as being the same as he experienced when using cocaine previously” (id. at 265) was competent to testify as to the identity of the substance at issue.
In People v Christopher (161 AD2d 896 [3d Dept 1990]), the Appellate Division, Third Department, affirmed County Court’s determination permitting a witness to testify regarding the identity of the substance in question. The witness
“testified that he had both injected and snorted heroin in the past, that he had taken other substances by injection and that the feeling produced by the substance in question was similar to that of heroin and was different from that of other substances. Thus, he was competent to render an opinion regarding the identity of the substance.” (Id. at 898.)
In People v O’Neill (285 AD2d 669 [3d Dept 2001]), the Appellate Division, Third Department, wrote:
“ ‘[I]n a drug-related prosecution, the People’s case is legally sufficient if the evidence provides a “reliable basis” for inferring the presence of a controlled substance . . . [but m]ore than conclusory assertions that the defendant possessed a drug are required at the Grand Jury stage’ (People v Swamp, 84 NY2d 725, 730 [citation omitted]). At trial, drug users who can demonstrate a knowledge of the narcotic are competent to testify in situations where the illegal substance is not available for analysis (see, People v Christopher, 161 AD2d 896, 897, lv denied 76 NY2d 786; People v Mullen, 152 AD2d 260, 266). The focus of the inquiry is on ‘ “the experience of the witness and the nature of his [or her] qualifications to identify the substance at issue” ’ (People v Czarnowski, 268 AD2d 701, 702 . . . ).” *695 (Id. at 671-672.)
In People v O’Neill (supra), the substance allegedly sold by O’Neill was not subjected to formal laboratory analysis, and the purchasers, when testifying before the grand jury, merely stated their conclusion that the pills which they purchased from O’Neill were Vicodin and hydrocodone — with no explanation of the basis for their conclusion. The Appellate Division, Third Department, in O’Neill affirmed County Court’s dismissal of the sale counts of the indictment for lack of legally sufficient evidence.
The Appellate Division, Third Department, holding in People v Czarnowski (268 AD2d 701 [3d Dept 2000]) is entirely distinguishable from the instant case because in Czarnowski a qualified pharmacist actually observed the generic Vicodin pills which the defendant admitted possessing, whereas in the instant case Arthur C. is the only witness who observed and used the substances which he allegedly received from Signature Pharmacy— the alleged oxymetholone in pill form, and the alleged testosterone in liquid form to be injected. If the People’s witness in the Kenny (supra) case lacked sufficient experience and qualifications to identify marihuana, then Arthur C. clearly lacked sufficient experience and qualifications to identify testosterone and oxymetholone. In fact, during the grand jury proceeding herein, Arthur C. did not actually even identify the substances which he allegedly received from Signature Pharmacy as testosterone or oxymetholone — but rather, he testified that “they worked” and that he “got a more water bulky appearance” and “more sexually active, strength went up.”
In this case, no evidence was presented to the grand jury relative to the experience of the witness Arthur C. and/or the nature of his qualifications to identify the substances at issue herein, to wit: oxymetholone and testosterone. Based upon all of the foregoing cases, this court holds and determines that the evidence presented to the grand jury herein failed to demonstrate that Arthur C. was a competent witness (i.e., possessed the experience, qualifications, and knowledge) to identify the controlled substances at issue herein, to wit: oxymetholone and testosterone.
(b) Offer or Agreement to Sell
Penal Law § 220.00 (1) defines the word “sell” to mean “to sell, exchange, give or dispose of to another, or to offer or agree to do the same” (emphasis supplied).
In order to support a drug related conviction under an offer or agreement to sell theory, there must be evidence of a bona *696 fide offer to sell, i.e., that the defendant had both an intent to sell and the ability to proceed with the sale (People v Mike, 92 NY2d 996 [1998], citing People v Gondolfo, 94 Misc 2d 696 [Sup Ct, NY County 1978]). Liability for the crime of criminal sale of a controlled substance may attach even where the transaction has not been consummated, because the statutory definition of the word “sell” includes the language “to offer or agree” to sell, exchange, give or dispose of to another; therefore, if a defendant makes a bona fide offer to sell drugs, conviction may be had without proof of possession of the contraband (People v Samuels, 282 AD2d 102, 106 [1st Dept 2001], lv granted 96 NY2d 909 [2001], affd 99 NY2d 20 [2002]).
In his Supplementary Practice Commentary relative to Penal Law article 220, Judge William C. Donnino has written the following:
“As discussed in the main Practice Commentary, the ‘troublesome’ aspect of the definition of ‘sale’ is the inclusion of the alternative ‘offer or agree’ to sell. The Court of Appeals has again emphasized that an ‘offer’ to sell requires that the People prove that the defendant had the intent to sell and the ability to do so, and has dictated that the trial court should so charge the jury. People v. Samuels, 99 N.Y.2d 20, 750 N.Y.S.2d 828, 780 N.E.2d 513 (2002). See, e.g., CJI2d [NY] Penal Law § 220.39(1).” (Donnino, Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 220, 2008 Pocket Part, at 9.)
The primary issues presented in the instant case are: (1) whether or not the evidence before the grand jury was legally sufficient to establish that the defendant Anthony Forgione offered and/or agreed to sell to Arthur C. the controlled substances oxymetholone and testosterone on the dates charged; and (2) whether the “offer to sell” or “agreement to sell” theory is viable when the evidence clearly shows that the alleged sale was in fact actually completed.
(1) In this case Arthur C. testified before the grand jury that he telephoned Infinity Longevity and spoke with a person who identified himself as Anthony Forgione and that he asked him for testosterone. Arthur C. testified that he completed and submitted a written questionnaire, and that he also faxed blood work to Infinity Longevity. By answering leading questions from the prosecutor, Arthur C. testified that on September 23, 2005, *697 he ordered oxymetholone and testosterone from defendant Forgione and that a bottle of liquid and a bottle of pills from Signature Pharmacy were thereafter delivered to his residence on Cataract Street in Cohoes. Arthur C. further testified before the grand jury that in December 2005, he ordered testosterone from defendant Forgione and that a bottle of liquid from Signature Pharmacy arrived at his home in Cohoes about a day later. Arthur C. never explicitly testified that the person with whom he spoke at Infinity Longevity “offered or agreed” to sell him testosterone and did not testify as to how much he paid to whom for the alleged testosterone.
Records seized from Infinity Longevity in Delray Beach, Florida, pursuant to a search warrant include a folder file (exhibit 1) containing photocopies of two prescriptions issued by Gary S. Brandwein, D.O., for Arthur C., to wit: (1) a prescription dated September 23, 2005, for “Oxymetholone 25 mg caps #42,” “Sust Test 250 mg/10 ml #1,” and “syringes-22ga IV2 needle/syringe #10” “Sig use as directed” (exhibit 1C); and (2) a prescription dated December 20, 2005 for “Sust test 250 mg/10 ml #3,” “Sig use as directed” (exhibit ID). The seized records also contain notations that Arthur C. paid $400 for the September 23, 2005 order and $420 for the December 2005 order. Gary S. Brandwein, D.O., testified before the grand jury that defendant Anthony Forgione owns Infinity Longevity, and that based upon his business relationship with defendant Anthony Forgione and Infinity Longevity, Dr. Brandwein wrote the aforesaid prescriptions for Arthur C. (exhibits 1C, ID) and that the prescriptions were transmitted to Signature Pharmacy — the supplier for Infinity Longevity. Dr. Brandwein never examined Arthur C. and never spoke to Arthur C.
In this case, the Assistant District Attorney charged the grand jury as to the “offer or agreement to sell” theory of criminal liability. Based upon all of the foregoing, this court holds and determines that the evidence presented to the grand jury was legally sufficient to establish that the defendant Anthony Forgione had the intent to sell oxymetholone and testosterone to Arthur C. and had the ability to do so — based upon defendant’s business association with a physician who wrote the prescriptions for controlled substances for Arthur C. to be filled by Signature Pharmacy and shipped to the purchaser, Arthur C.
(2) As previously set forth herein, “the ‘troublesome’ aspect of the definition of ‘sale’ is the inclusion of the alternative ‘offer or agree’ to sell” (Donnino, Supp Practice Commentary, Me- *698 Kinney’s Cons Laws of NY, Book 39, Penal Law art 220, 2008 Pocket Part, at 9). This court was unable to find any reported New York case approving of or applying the offer or agree to sell theory to a factual situation where the evidence clearly showed that the transaction at issue was actually completed. Completed drug sale transactions of course generally require the People to prove at trial: (a) by formal laboratory analysis the identification of the alleged controlled substance; or (b) by testimony from a competent witness (i.e., qualified by knowledge and experience to identify the substance at issue) the identification of the alleged controlled substance, whereas the offer or agreement to sell theory requires the People to prove at trial that the defendant had both the intent to sell the controlled substance at issue and the ability to do so (People v Samuels, supra).
If the “fall back” theory of “offer or agree” to sell can properly be applied to completed drug transactions, then such “offer or agreement” to sell theory can be applied to virtually every single case involving an alleged completed sale of a controlled substance where the actual transfer was preceded by negotiation and agreement (see People v Lawson, 84 Misc 2d 24, 26 [Sup Ct, NY County 1975]). The jury would be charged that if the People failed to prove beyond a reasonable doubt the identification of the controlled substance at issue, the jury could then consider whether the People had proved beyond a reasonable doubt that the defendant had both the intent to sell the controlled substance at issue, and the ability to do so. The ultimate irony in the instant case will be that the People at trial — in order to prove the defendant’s intent and agreement to sell testosterone and his ability to do so — will want to present evidence that Arthur C. on or about September 25, 2005 and on or about December 20, 2005 actually received from Signature Pharmacy substances purporting to be oxymetholone and testosterone which he used and consumed, i.e., that the sale was completed!
Notwithstanding all of the foregoing, this court holds and determines that the actual transfer of the purported drugs does not preclude prosecution on an agreement to sell theory, i.e., the intent and ability to sell theory. Even though this court could not find a single published New York case approving the application of the “offer or agree” to sell theory of criminal liability to a completed drug sale, this court holds and determines that the “offer or agree” to sell theory of criminal liability can lawfully be applied in this case involving a completed alleged *699 drug sale — where the grand jury evidence of the defendant’s intent to sell testosterone and his ability to do so was not only legally sufficient, but also quite clear.
This court holds and determines that the defendant’s motion to dismiss the indictment for lack of legally sufficient evidence before the grand jury should be and the same is hereby denied.
III. Motion to Compel Discovery
The Assistant District Attorney within his affirmation in opposition to this motion asserts that “the discovery has been provided to the defendant and he has acknowledged same by letter to the Court.” A copy of the People’s discovery response was filed with the court on April 24, 2008. By letter dated May 8, 2008, defendant’s counsel acknowledges receipt of the People’s response, but asserts that defendant still seeks additional items that were not provided by the People.
The defendant’s demand for discovery goes far beyond the provisions of CPL 240.20 for discovery upon demand. The defendant in his motion papers has made no showing as required by CPL 240.40 for court ordered discovery.
The defendant’s motion for court ordered discovery is hereby denied — subject to the defendant’s right pursuant to the provisions of CPL 200.95 (5) and (6), 255.20 and 240.40 to challenge any denial or failure to comply by the People. Motion denied without prejudice.
IV-V Preclusion of Evidence for Lack of CPL 710.30 Notice
Defendant seeks preclusion of any undisclosed statements allegedly made by defendant to law enforcement personnel and any identification testimony by any witness who has previously identified defendant in a police arranged identification procedure — owing to the lack of CPL 710.30 notice served by the People. The People have failed to respond, and the People’s CPL 710.30 notice is devoid of any notice of such evidence. Motion granted.
VT-VII. Suppression of Tangible Property
A Dunaway/Mapp hearing will be held at a time appointed by the court (see People v Bryant, 8 NY3d 530 [2007]). If not already provided, the People are directed to provide the defendant with copies of any search warrants and any search warrant applications for the search of defendant’s home and/or place of business.
*700 VIII. Suppression of Wiretap Evidence
The Assistant District Attorney essentially asserts that the People do not intend to utilize any wiretap evidence against the defendant at trial. This does beg the question as to whether any wiretap evidence led to other evidence that should be suppressed as the fruit of the poisonous tree. Motion denied.
IX. Audibility Hearing
Based upon the Assistant District Attorney’s position that wiretap evidence will not be utilized against the defendant, defendant’s motion for an audibility hearing is hereby denied as moot. Motion denied.
X. Darden Hearing
Unless a confidential informant was utilized to obtain the search warrant herein, the defendant’s motion for a Darden hearing is hereby denied without prejudice.
XI. Brady Material
The Assistant District Attorney is directed forthwith to furnish defendant all Brady material known to him, or which, with due diligence, ought to be known to him, and all such material that may hereafter become known to him.
XII. Sandoval/Ventimiglia Hearings
A Sandoval hearing will be held before the trial judge prior to trial.
The People are directed to comply with the provisions of CPL 240.43 three days prior to jury selection, excluding Saturdays, Sundays and holidays.
A Ventimiglia hearing will be held before the trial judge prior to trial — but only if the People seek the court’s permission to submit evidence of uncharged crimes in their case-in-chief, and at least 10 days prior to trial so notify the court and the defendant’s counsel in writing. Motion denied without prejudice.
XIII. Rosario Material
The District Attorney is directed to make available to the defendant all Rosario material in accordance with the directives as contained within CPL 240.44 and CPL 240.45, if not earlier.
*701 XIV Reservation of Rights and Other Motions
Any further motions are governed by the provisions of CPL 255.20 (3).