OPINION OF THE COURT
John H. Wilson, J.
Does the exercise of the court’s discretion, authorized in People v Kalin (12 NY3d 225 [2009]), to deem a misdemeanor complaint charging a drug-related offense to be an information in the absence of a field test or laboratory analysis violate the defendant’s constitutional right to due process?
Factual Statement
Defendant is charged with one count of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), a class A misdemeanor. Pursuant to the Criminal Court complaint, a paralegal with the Kings County District Attorney’s Office states that she is informed by Police Officer Konrad Zakiewicz that on or about April 19, 2009, at 7:32 p.m. at 390 Nostrand Avenue, County of Kings, City and State of New York, defendant was in possession of crack cocaine.
The Criminal Court complaint cites the police officer’s “professional training” in the “identification of crack cocaine,” and notes that the officer “has previously made arrests for the criminal possession of crack cocaine,” and “is familiar with the common methods of packaging crack cocaine.”
Defendant was arraigned before this court on April 28, 2009. At that time, the People filed a supporting deposition signed by Officer Zakiewicz, which identified the contraband seized as a “glass pipe containing crack cocaine residue.”[1] The People then asked that the complaint be deemed an information, pursuant to Kalin. The defense objected, on the grounds that in the absence of a laboratory analysis of the substance recovered, there is no reasonable or probable cause “to believe that the substance involved is a controlled substance.”
*946 The court asked the parties to brief this issue, before determining whether or not a laboratory analysis would be necessary before the complaint could be deemed an information. The defense submitted their memorandum of law on May 7, 2009; the People filed theirs on May 20, 2009.
On June 1, 2009, the People filed a statement of readiness with a certified laboratory analysis attached, which indicates that the substance recovered is, in fact, cocaine residue.
Legal Analysis
(A) Mootness of the Issue Considered
At the outset, it should be noted that the filing of the People’s statement of readiness with the attached certified laboratory analysis would normally render any further discussion of these issues moot. This case, however, fits the criteria for an exception to the mootness doctrine.
An issue is moot when “it may not properly be decided by this court unless it is found to be within the exception to the doctrine which permits the courts to preserve for review important and recurring issues which, by virtue of their relatively brief existence, would be rendered otherwise nonreviewable.” (See Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714 [1980], citing Roe v Wade, 410 US 113, 125 [1973].)
In Matter of Hearst, the Court of Appeals identified three factors which would justify an exception to the mootness doctrine: “(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues.” (50 NY2d at 714-715.) Where these three factors are present, this issue should be addressed by a court as an exception to the mootness doctrine. (See People v Brown, 5 Misc 3d 529, 530-531 [Sup Ct, Kings County 2004]; People v Mejia, 2 Misc 3d 494, 496 [Crim Ct, Kings County 2003]; Matter of Crystal AA., 271 AD2d 771 [3d Dept 2000]; People ex rel. Wagner v Infante, 167 AD2d 630, 631 [3d Dept 1990].)
This court finds that all three factors are present in the current matter. The question raised here is repeatedly addressed every day in the criminal courts of the City and State of New York. Further, different judges may view the same accusatory instrument and, in exercising their discretion under Kalin, may come to opposing conclusions as to whether or not said accusatory instrument establishes a prima facie case. Once the ar *947 raignment judge exercises his or her discretion, this issue will rarely, if ever, be reviewed.
Most important, the novel issue presented here is of critical importance to the functioning of the criminal courts — does the exercise of the court’s discretion to deem a misdemeanor complaint charging a drug-related offense to be an information in the absence of a field test or laboratory analysis violate the defendant’s constitutional right to due process?
(B) Dumas and Jahron S. Examined
Under CPL 100.15, it is well established that every accusatory instrument must contain two elements: (1) an accusatory portion designating the offense charged, and (2) a factual portion containing evidentiary facts which support or tend to support the charges stated in the accusatory portion of the instrument. Further, under CPL 100.40, it is equally well established that a misdemeanor information is facially sufficient if the nonhearsay facts stated in said information establish each and every element of the offense charged, as well as the defendant’s commission of said crime. If both these factors are present, then the information states a prima facie case, and is sufficient. (See People v Alejandro, 70 NY2d 133 [1987].)
In People v Dumas (68 NY2d 729 [1986]), the defendant was charged with the sale and possession of marijuana. The lower court had dismissed the complaint as legally insufficient; however, the Appellate Term had reversed and reinstated the complaint. The Court of Appeals reversed the Appellate Term and reinstated the dismissal. The Court of Appeals held that the Criminal Court complaint failed to show the basis for the officer’s belief that the substance sold and recovered was in fact marijuana, and contained “no allegation that the police officer is an expert in identifying marihuana.” (Id. at 731.)
Subsequently, all complaints filed in criminal court now contain what has come to be called the “Dumas language”— that is, a statement detailing the police officer’s training and experience in the identification of controlled substances.
In Matter of Jahron S. (79 NY2d 632 [1992]), a juvenile was charged under a Family Court petition with possession of crack cocaine. Commenting on the “Dumas language,” the Court of Appeals stated that the arresting officer’s “opinion as to the content of the vials is legally insufficient because it does not by itself establish the existence of a controlled substance.” (Id. at 636 [emphasis added].) This was the case even if the officer as *948 serted that the substance recovered was crack cocaine based upon his “training and experience.”
In language pertinent to our discussion, the Jahron S. Court noted that
“[a]ppellants urge us to hold that a laboratory report is always necessary in order to establish a prima facie case of cocaine possession. There is no need to establish a per se rule. We leave open the possibility that a deposition based on personal knowledge and expertness may, in now unforeseen circumstances, qualify as sufficient evidence to establish a prima facie case of drug possession because of the nature of the crime, or its elements, or the special knowledge of the affiant.” (Id. at 640.)
Despite this 17-year-old precedent, however, almost all criminal courts have uniformly held that a laboratory report, or a field test,[2] was necessary before a court would deem a drug-related complaint to be an information. For a comprehensive review of this topic, see People v Brown (22 Misc 3d 1125[A], 2009 NY Slip Op 50279[U] [Nassau Dist Ct 2009]), and the cases cited therein.
(C) Kalin Discussed
Recently, the Court of Appeals reexamined the rules established in Jahron S. In Kalin (supra), the defendant was a passenger in a vehicle stopped for a traffic infraction. During a search of the vehicle, nine bags of heroin and a bag of marijuana were recovered, as well as a “marijuana pipe.” At his arraignment, Mr. Kalin pleaded guilty to criminal possession of a controlled substance in the seventh degree, a class A misdemeanor (Penal Law § 220.03), and received a sentence of time served. (12 NY3d at 227.)
The Appellate Term reversed Mr. Kalin’s conviction on the basis that the trial court “did not advise defendant that he had the right to be prosecuted by a misdemeanor information rather than a misdemeanor complaint.” (Id. at 228.) However, the Court of Appeals reversed the Appellate Term, and reinstated the conviction.
After discussing the defendant’s right to waive prosecution by information, the Court noted that “in the absence of [an express waiver], the sufficiency of the accusatory instrument . . . must *949 be evaluated under the standards that apply to an information.” (Id., citing People v Weinberg, 34 NY2d 429, 431 [1974].)
Reiterating the ruling of Dumas, the Court of Appeals stated that “[standing alone, a conclusory statement that a substance seized from a defendant was a particular type of controlled substance does not meet the reasonable cause requirement.” (Id. at 229, citing Dumas at 731.) Based upon this ruling, as well as the ruling in Jahron S., the Appellaté Term did not believe the allegation of training and experience stated in the Kalin complaint was enough to allow the Criminal Court to deem the complaint to be an information.
The Court of Appeals disagreed with the Appellate Term’s reading of Jahron S. Departing from Jahron S., the Court noted that in the complaint against Mr. Kalin, the arresting officer had cited his “training and experience” in the identification of controlled substances and their packaging, and based upon that knowledge, the officer had concluded that the substances recovered from the car in which Mr. Kalin was a passenger were cocaine and marijuana. (12 NY3d at 231.) The Court then reviewed the allegations made in the Criminal Court complaint, and stated that under these circumstances, “the assertions [made in the complaint] were enough to inform defendant that the substances seized were heroin and marijuana.” {Id.)
As in Jahron S., the Court of Appeals stated clearly that it “reject[ed] the notion that a laboratory report is necessary to set forth a prima facie case.” {Id.) However, the Court went on to state that “to require the recitation of a mandatory catechism in an information that otherwise adequately identifies the particular drug” is unnecessary under the “pleading standards of the Criminal Procedure Law.” {Id.)
The Kalin Court noted that criminal court complaints often will indicate that cocaine is “white in color” and marijuana is “green and leafy. While it may be the safer practice for law enforcement to routinely use these descriptive phrases ... we would not hold that the absence of such phraseology rendered the information in this case jurisdictionally deficient.” {Id. at 232.)
Thus, where Jahron S. stated that a police officer’s “opinion as to the content of the vials is legally insufficient because it does not by itself establish the existence of a controlled substance” (79 NY2d at 636), even if the officer asserted that the substance recovered was crack cocaine based upon his “training and experience,” Kalin states that an officer’s asser *950 tion of his or her training and experience in the identification of drugs, and his or her conclusion based upon that training and experience, could be a sufficient basis upon which to deem a criminal court complaint to be an information.
In other words, after Kalin, if the lower court is satisfied with the police officer’s assertions of his or her training and experience and the allegations contained in the complaint, even without a description of the substance seized, the lower court has the discretion to accept those allegations, declare the complaint to be legally sufficient, and deem the complaint to be an information.
This leads us to the question presented — whether such an exercise of discretion is consistent with the court’s obligation to protect the constitutional due process rights of all defendants who appear before the court.
(D) Procedural Due Process
Under article I, § 6 of the New York State Constitution, “No person shall be deprived of life, liberty or property without due process of law.” “[N]or shall any State deprive any person of life, liberty, or property, without due process of law.” (US Const, 14th Amend, § 1.)
In Hamdi v Rumsfeld (542 US 507 [2004]), the United States Supreme Court acknowledged that there is a tension “between the autonomy that the Government asserts is necessary in order to pursue effectively a particular goal and the process that a citizen contends he is due before he is deprived of a constitutional right.” (Id. at 528-529, citing Mathews v Eldridge, 424 US 319, 335 [1976].)
In Mathews, the Supreme Court identified three factors to be considered:
“[T]he process due in any given instance is determined by weighing ‘the private interest that will be affected by the official action’ against the Government’s asserted interest, ‘including the function involved’ and the burdens the Government would face in providing greater process. The Mathews calculus then contemplates a judicious balancing of these concerns, through an analysis of ‘the risk of an erroneous deprivation’ of the private interest if the process were reduced and the ‘probable value, if any, of additional or substitute procedural safeguards.’ ” (Hamdi at 529 [citation omitted].)
In Hamdi, these rules were applied by the Supreme Court to the United States Government’s efforts to classify individuals *951 as enemy combatants without a hearing or the opportunity to present evidence. There, the court found that “Hamdi’s ‘private interest’ ... is the most elemental of liberty interests — the interest in being free from physical detention by one’s own government.” (Hamdi at 529.) While the Government’s interests were found to be “substantial,” the Supreme Court found that “ ‘[i]n our society liberty is the norm,’ and detention without trial ‘is the carefully limited exception.’ ” (Hamdi at 529, quoting United States v Salerno, 481 US 739, 755 [1987].) Thus, “[w]e have always been careful not to minimize the importance and fundamental nature of the individual’s right to liberty.” (Hamdi at 529-530 [citations and internal quotation marks omitted].)
Addressing the second prong of the Mathews v Eldridge test, the Hamdi court noted that “[procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.” (Hamdi at 530, quoting Carey v Piphus, 435 US 247, 259 [1978].) Thus,
“as critical as the Government’s interest may be in detaining those who actually pose an immediate threat to the national security of the United States during ongoing international conflict, history and common sense teach us that an unchecked system of detention carries the potential to become a means for oppression and abuse of others who do not present that sort of threat.” CHamdi at 530 [emphasis added].)
In addressing the third prong of the Mathews v Eldridge test, the Supreme Court held that allowing an individual accused of being an enemy combatant the ability to challenge his status at a hearing would “meet the goal of ensuring that the errant tourist, embedded journalist, or local aid worker has a chance to prove military error while giving due regard to the Executive once it has put forth meaningful support for its conclusion that the detainee is in fact an enemy combatant.” (Hamdi at 534.)
The New York Court of Appeals has previously recognized the importance of providing procedural due process to all criminal defendants. “[I]t is procedure that marks much of the difference between rule by law and rule by fiat.” (People v David W., 95 NY2d 130, 136 [2000], citing Wisconsin v Constantineau, 400 US 433, 436 [1971].)
In David W., the Court applied the Mathews v Eldridge test in the context of whether or not a defendant convicted of a sex *952 offense was entitled to notice and an opportunity to be heard before being placed on the Sex Offender Registry. The Court found that “[defendant’s private interest, his liberty interest in not being stigmatized as a sexually violent predator, is substantial.” (David W. at 137 [citations omitted].) Further, “[u]nder the second prong of the Mathews analysis, the procedures in place for this probationer-defendant, however, do not sufficiently prevent ‘the risk of an erroneous deprivation of [defendant’s] interest.’ ” (David W. at 138, quoting Mathews, 424 US at 335.)
Thus, in holding that the “review procedures provided to defendant here do not bridge the due process gap,” the court stated that “[u]nder the third prong of the Mathews analysis, the fiscal and administrative burdens imposed by requiring notice and opportunity to be heard are not prohibitive and are not so significant as to warrant limiting defendant to the procedures the Legislature provided.” (David W. at 139 [citations omitted].)
This court’s review of Mathews, Hamdi and David W. leads inexorably to the conclusion that in the majority of cases, procedural due process demands that a field test or laboratory analysis be filed before a misdemeanor complaint charging a drug-related offense is deemed an information.[3]
The private interest at stake here is the defendant’s physical liberty — “the interest in being free from physical detention by one’s own government.” {Hamdi at 529.) All too often, in misdemeanor cases, many defendants cannot post even relatively modest amounts for bail, and will remain incarcerated for indeterminate periods of time pending trial. While there is no doubt that the Government has a substantial interest in the prosecution of drug-related offenses, in reaching our ruling, this court echoes the Supreme Court, who “reaffirm[ed] today the *953 fundamental nature of a citizen’s right to be free from involuntary confinement by his own government without due process of law.” (Hamdi at 531.)
In Hamdi, the United States Supreme Court recognized the liberty interests of those held as “an immediate threat to the national security of the United States.” (Id. at 530.) In David W., the Court of Appeals stated that “[the] liberty interest in not being stigmatized as a sexually violent predator[] is substantial.” (95 NY2d at 137.) Is the physical freedom of an individual who may be held for an indeterminate length of time awaiting trial for a misdemeanor offense any less important than the “liberty interest” of enemy combatants and registered sex offenders?
Addressing the second prong of the Mathews test, if the criminal courts entirely dispense with the filing of a laboratory report or field test before deeming a complaint to be an information, there is a substantial “risk of an erroneous deprivation” of an individual’s liberty through the procedures endorsed in the Kalin decision. It is unnecessary to cite the percentage of cases where police officers, for all their training and experience, have been wrong about the nature of the substance recovered[4] —ANY instance of this occurrence is unacceptable if all uncertainty as to the nature of the substance recovered can be eliminated by the filing of a laboratory analysis.
Thus, the third prong of the Mathews test, which requires an assessment of the “probable value” of the “additional or substitute procedural safeguard” of having a field test or laboratory analysis available before the misdemeanor complaint is deemed an information is readily apparent.
Further, there is no additional “fiscal [or] administrative burden[ ] that the additional or substitute procedural requirement would entail.” (David W., 95 NY2d at 136-137.) The People already provide a certified laboratory analysis to the court in an effort to establish one or more of the elements of misdemeanor drug possession. In fact, for 17 years, in the majority of cases, the People have provided that information to a court within five days of the defendant’s arrest. There is no evidence that this practice has been unreasonable or burdensome for that lengthy period of time.
*954 These concerns for procedural due process, expressed so cogently in David W., are more evident in the dissent to Kalin than in the majority opinion. While the dissenting Judges also noted that a laboratory report is not always necessary to establish a prima facie case (12 NY3d at 233 [Ciparick, J., dissenting]), the dissenters took issue with the majority accepting allegations they felt were “conclusory” at best. (Id. at 234.)
Echoing the concerns expressed in David W, without actually referring to the Mathews v Eldridge test, the dissent stated as follows:
“By holding that the charging instrument here is sufficient. . . the majority brushes aside the protections that must be afforded to misdemeanor defendants to ensure that such prosecutions do not become routinized or treated as insignificant or unimportant. No undue burden will fall upon the People if they are required to expand the description of the drugs and packaging or provide specific information as to an officer’s training and experience. Nor will the trial courts be unduly burdened by requiring that a defendant specifically waive prosecution by information.” (Id. at 234.)
As noted previously, for the past 17 years, the language in Jahron S. allowing conversion of a misdemeanor complaint in the absence of a laboratory report has been largely ignored. The reason for this can be found in the criminal court’s efforts to protect the constitutional rights of all defendants who appear before our courts. While the words “procedural due process” do not appear in the cases decided between Jahron S. and Kalin, the concept underpins almost every decision made during that time period. (See Brown, supra, and cases cited therein.)
Even before Jahron S. was decided, New York’s trial courts evidenced a concern for the procedural due process rights of misdemeanor defendants. As noted in People v Paul (133 Misc 2d 234, 238 [Crim Ct, NY County 1986]), “[w]hether a foundation for the experience and training is set forth or not, it seems that, as a matter of fundamental fairness, defendant should not have to proceed to trial in a narcotics case unless and until a laboratory report has been filed by the People.” (Emphasis added.)
As both Jahron S. and Kalin note, there will be cases where the complaint, as drafted, will not require the filing of a field test or laboratory analysis, just as the People will sometimes be *955 able to establish the presence of narcotics by circumstantial rather than direct evidence. However, if the Kalin decision allows a lower court to use its discretion to accept a police officer’s assertions of their training and experience and the other allegations contained in the complaint, without a description of the substance seized, and declare them to be legally sufficient in all cases, then Kalin, as well as Jahron S., is inconsistent with the court’s obligation to protect the constitutional right to procedural due process discussed by the United States Supreme Court in Mathews and Hamdi, and by the New York Court of Appeals in David W.
In fact, if Kalin is used to excuse the People from producing a field test or laboratory analysis before conversion of the complaint in all cases, there is a substantial risk of our participation in an “unchecked system of detention,” which would carry “the potential to become a means for oppression and abuse.” (Hamdi, 542 US at 530.) As stated in the dissent to Kalin, the criminal courts of the State of New York must continue “to ensure that such prosecutions do not become routinized or treated as insignificant or unimportant.” (Kalin, 12 NY3d at 234.)
Thus, in an effort to insure that each defendant receives the procedural due process they are guaranteed under the New York State and Federal Constitutions, this court will continue to require the People to file a laboratory report or field test before a prima facie case is established in the majority of drug-related cases.
In the instant matter, the People have filed a laboratory analysis dated May 18, 2009. With the filing of said report, the misdemeanor complaint dated April 20, 2009 is deemed an information, as of June 1, 2009, the date when the People filed the laboratory analysis with their statement of readiness.
All other arguments advanced by the People and the defendant in their respective briefs have been reviewed and rejected by this court as being without merit.

. There can be no dispute that possession of crack cocaine residue “can give rise to criminal liability.” (See People v Mizell, 72 NY2d 651, 654 [1988].)

. The acceptance of a field test in place of a laboratory analysis was authorized by People v Swamp (84 NY2d 725, 730-731 [1995]).

. As recognized by Jahron S. and Kalin, there are instances where a field test or laboratory analysis will not be necessary, and the People may establish a drug-related charge without such scientific evidence. A review of case law indicates that such circumstances are the exception and not the rule. For instance, see People v Czarnowski (268 AD2d 701, 702 [3d Dept 2000]), where a pharmacist found an unlabeled vial containing white pills in her pharmacy. The pharmacist testified that she was able to identify the pills as Vicodin when “she compared the numerical code on a pill from the subject vial with the code on the pills in the general stock of generic Vicodin.” (268 AD2d at 702.) Despite the fact that the pills were not available at trial, since the pharmacist had returned them to her general stock, the defendant, who had admitted to taking the pills and hiding them in the store, was convicted of criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09).

. Indeed, it is appropriate at this point to note that the instant complaint states that Mr. Nunn was in possession of crack cocaine, while the laboratory analysis filed with the People’s statement of readiness notes that the substance is, in fact, cocaine residue.